IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Petition of Burton R. Adams : 
and Joanne M. Adams, his wife : 
                               :    No. 863 C.D. 2016
Appeal of: William Dittmar and :    Argued: December 15, 2016
James M. Corl : 


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                    HONORABLE PATRICIA A. McCULLOUGH, Judge
                    HONORABLE JULIA K. HEARTHWAY, Judge[1]

OPINION
BY PRESIDENT JUDGE LEAVITT                 FILED: September 21, 2017

       William M. Dittmar and James M. Corl (Corl)[2] appeal an order of the Court of Common Pleas of the 44th Judicial District, Sullivan County Branch (trial court), overruling their exceptions to a report of a Board of View (Board) issued in a proceeding under the Private Road Act.[3] The Board recommended that Burton and Joanne Adams be granted the right to use an existing private road (Roadway) on Corl's property. The Board found that opening the Roadway to the Adamses was necessary and would serve a public purpose. The trial court confirmed the Board's report, and Corl appealed.

       The Adamses own a 231-acre parcel of land in Colley Township, Sullivan County, and most of this parcel is located on top of a mountain. Corl's 500-acre parcel lies immediately to the west of the Adamses' parcel. Route 87 lies south of both parcels. On the western side of the two parcels, Holly Hill Road

---

[1] This case was decided before Judge Hearthway's term ended on September 1, 2017.

[2] The parties stipulated that after the Board of View's report of February 21, 2014, William M. Dittmar conveyed his entire interest in the subject property to James M. Corl, who is now the sole owner of the property at issue.

[3] Act of June 13, 1836, P.L. 551, *as amended*, 36 P.S. §§2731-2891.

travels north from Route 87 up the hill and ends on Corl's parcel, approximately 2,000 feet from the Adamses' property. On the eastern side of these two parcels, Star Road, a dirt road, travels north from Route 87 in a valley, along a river.[4] Approximately one-half mile after it leaves Route 87, Star Road meets the southern and eastern boundaries of the Adamses' parcel.

In 2009, Chesapeake Corporation (Chesapeake) built the Roadway to provide access from Holly Hill Road, a public road, to its natural gas drilling site on Corl's land. Notes of Testimony at 12 (N.T. ___); Reproduced Record at 51a (R.R. ___). Chesapeake's Roadway begins where Holly Hill Road meets Corl's property. The Roadway crosses Corl's property for 2,200 feet, where it meets the Adamses' property line. The Roadway then continues across the Adamses' property for 3,400 feet before it reenters Corl's property; it continues for two hundred yards to the gas pad on Corl's land. *Id.*

After the Roadway was built, the Adamses used the 2,200-foot stretch of the Roadway on Corl's land to access their property from Holly Hill Road. Three years later, Chesapeake erected gates at two points on the Roadway. The first gate was placed on Corl's land, close to where the Roadway connects to Holly Hill Road. The second gate was placed on the Adamses' land, shortly after it leaves Corl's land. The Adamses have access to the gate on their property, and at one time they had access to the gate on Corl's property. Corl directed Chesapeake to change the lock and not to give the combination to the Adamses.

---

[4] A bird's eye view of Holly Hill Road and Star Road may be accessed by visiting maps.google.com and entering "Holly Hill Road, Dushore, PA 18614" into the search bar. Google's "Earth" feature provides a more detailed terrain.

2

On February 26, 2013, the Adamses filed a petition pursuant to Section 11 of the Private Road Act, 36 P.S. §2731,[5] to open a private road. Alleging that their property was effectively landlocked, the Adamses sought the right to resume their use of the 2,200-foot stretch of the Roadway that was built, maintained and used daily by Chesapeake. The trial court granted the petition and appointed a Board of View to inspect the properties and determine whether the Adamses' use of the Roadway was necessary. The parties agreed that the site visit alone would provide the basis of the Board's decision and, thus, "a full evidentiary hearing was waived." Supplemental Report, 9/15/2015, at 2.

On November 18, 2013, the Board conducted a site visit. Following the visit, the Board issued a report dated February 21, 2014, where it made, *inter alia*, the following finding:

> f) ... Petitioners' land is effectively landlocked due to the fact that the only other means of access to their land that was identified to the Board would be via an approximately one mile long unimproved logging trail located off of Star Road that involved an extremely steep upward and winding incline to the crest of the Petitioners' land. It was observed to be

---

[5] It states:

> The several courts of quarter sessions shall, in open court as aforesaid, upon the petition of one or more persons, associations, partnerships, stock companies, or corporations, for a road from their respective lands or leaseholds to a highway or place of necessary public resort, or to any private way leading to a highway, or upon the petition of the chief executive officer of any executive or administrative department of the State Government for a road from any public highway across any lands of any person, association, or corporation to the boundary line of any lands owned, controlled, or administered by the Commonwealth, direct a view to be had of the place where such road is requested, and a report thereof to be made, in the same manner as is directed by the said act of thirteenth June, one thousand eight hundred and thirty-six.

36 P.S. §2731.

3

significantly more narrow and inhospitable than the Roadway, and in the opinion of the Board would be extremely expensive and arduous for the Petitioners to effectively and efficiently construct a [passable] road that would allow for safe and reliable transit to allow a residential construction crew to gain access to the Petitioners' land.

Board Report, 2/21/2014, at 3-4. The Board concluded that the Adamses "should be granted unlimited access over and upon" the Roadway. *Id.* at 5.

Corl filed exceptions to the Board's report, arguing that the Adamses' property was not landlocked for the stated reason that Star Road, an abandoned township road, provided "easy access" to their property. Exceptions to Report of Board of View and Request for Remand to Create a Record; R.R. 26a. Thereafter, Corl filed a supplemental objection that the Adamses' intended use of the Roadway would not serve a public purpose. R.R. 27a. The trial court remanded the matter to the Board to create a record. At the Board's hearing on July 24, 2015, the Adamses presented evidence. Corl did not present any evidence to support his exceptions.

Burton Adams testified about the need to use the existing Roadway to access his property. On direct examination, Adams testified as follows:

[Counsel]: What is the closest township road to your property?

[Adams]: Holly Hill Road.

[Counsel]: And do you have any direct access at all from Holly Hill Road which is also Colley Township Road T-443 to your property?

[Adams]: No.

[Counsel]: Is there a way that you can access your property from Holly Hill Road?

[Adams]: Yes.

4

[Adams' Counsel]: And describe that access to the Board [].

[Adams]: That access is a commercial road that crosses [Corl's] property two thousand one hundred and thirty-nine point something feet and that road is used constantly by Chesapeake to access the gas pad which is on the other side of my property and which on my property I have 3,387 feet approximately and there's another couple hundred yards where it's on Mr. Corl's property and that is a gas pad and it's producing and it is providing gas to the general public through a pipeline.

N.T. 9-10; R.R. 48a-49a.

Adams also testified about Star Road, a dirt road, that abuts the eastern border of his property, which lies in the valley. Adams testified that Star Road was an abandoned township road.[6] Star Road ends in a logging trail on the Adamses' land. However, the logging trail cannot be used to access the hilltop part of the Adamses' property. Adams testified as follows:

[Counsel]: Can you describe the alleged other access suggested by [Corl] to the Court?

[Adams]: Yes sir…[b]asically from where the public road [Route 87] ends and I can access my property it's an old – the lower end of it is actually a skid road and then part way up is

---

[6] The dissent observes, correctly, that when a township road is validly terminated, it becomes a private road "for the use and benefit of the owners of lands through or along which it passes." *Schantz v. Bahry*, 43 A.3d 536, 542 (Pa. Cmwlth. 2012). The dissent notes the record does not include evidence that the township validly terminated Star Road. However, the termination, or "abandonment," of Star Road is not in dispute. Corl's exceptions to the Board's initial report described Star Road as "an abandoned township road," as did his supporting memorandum of law. R.R. 26a.

Adams explained that he owns half of Star Road where it abuts his property. N.T. 42-43; R.R. 81a-82a. Consistent with the law of this Commonwealth, Star Road is now a private road. Whether Star Road's access to the Adamses' land is one of limited privilege was not considered by the Board of View or the trial court.

5

nothing more than a path where they skidded logs down and that's how we access the property.

[Counsel]: And is that access steep?

[Adams]: Yes. It's over a thousand foot rise and it's over a mile long to get there.

[Counsel]: And approximately what would be the cost of making that road [passable] so you could access your property?

[Adams]: I don't know an exact cost but we're looking at over hundreds of thousands of dollars to do that I suspect.

N.T. 24; R.R. 63a.

Following the hearing, the Board issued a supplemental report dated August 31, 2015, finding the Adamses' land to be effectively landlocked. The Board explained its decision as follows:

> h) *In the opinion of the Board of View*, the Petitioners' *land is effectively landlocked* due to the fact that the only other means of access to their land that was identified to the Board would be by way of an approximately one mile long unimproved logging trail located off of Star Road that involved an extremely steep upward and winding 1000 foot incline to the crest of the Petitioners' land. *Access via Star Road was personally observed by the Board to be significantly more narrow and inhospitable than the route from Holly Hill Road to the Roadway, and in the opinion of the Board the cost of improvement of the logging trail to allow for the safe and reliable transit of vehicular traffic to and from the Petitioners' land would be prohibitively expensive and arduous* for the Petitioners to have effectively and efficiently constructed and would not be financially feasible or cost-effective. Consequently, unless an appropriate alternate means of access is identified, the Board is of the opinion that the Petitioners' land is indeed landlocked and otherwise inaccessible to the Petitioners for their stated use and purpose.

6

Board Report, 8/31/2015, at 6 (emphasis added).[7]

The Board found that the "Roadway [is] the shortest, safest, most convenient, accessible and reliable current means of access, which will result in no discernible injury to [Corl's] Property." *Id.* at 10. Accordingly, the Board concluded that "[the Adamses] should be granted the requested access over and upon [Corl's] land for the stated purpose of constructing and accessing a seasonal cabin to be constructed upon [their] land." *Id.* The Board did not award compensation to Corl, noting that Corl did not ask for it. The Board further explained that the Roadway was maintained by Chesapeake and that the additional use by the Adamses would be minimal, particularly when compared to Chesapeake's heavy and daily truck traffic over the Roadway.

Corl filed exceptions to the Board's supplemental report. He argued that the Board erred in finding that the Adamses' land was effectively landlocked and that the Adamses' opening of the Roadway was for a public purpose. On March 24, 2016, the trial court overruled Corl's exceptions and accepted the Board's report. Corl appealed to this Court.

On appeal,[8] Corl raises several issues. Corl contends that the Adamses have access to their land by way of Star Road. Although the Adamses

---

[7] Adams testified that it would be cost-prohibitive to construct a mile long road, over rocky and wooded terrain up a 1,000-foot incline. He estimated the cost to exceed several hundred thousand dollars. The Board agreed because it was confirmed by their site visit. Corl had the opportunity to offer rebuttal testimony, but he offered no evidence on this point. Nor did Corl offer evidence of alternative access to the Adamses' parcel. Finally, Corl offered no evidence to support the claim raised in his exceptions that Star Road gave the Adamses "easy access" to their property.

[8] Appellate review of a trial court's order confirming the opening of a private road is to ascertain the validity of the jurisdiction of the board of view, the regularity of the proceedings, questions
**(Footnote continued on the next page . . .)**

7

may prefer to use Holly Hill Road and the existing Roadway to access their land, they are not entitled to the access of their choice. Corl also argues that the Board erred in finding that the Roadway's use to generate natural gas for public consumption provides a public benefit that warrants the establishment of a private road.

The Private Road Act authorizes a landowner to petition for the use of, or the creation of, a private road across another's land to access his property. *In re Opening Private Road for Benefit of O'Reilly*, 5 A.3d 246, 284 (Pa. 2010). Section 12 of the Private Road Act states as follows:

> If it shall appear by the report of the viewers to the court directing the view, *that such road is necessary*, the said court shall direct what breadth the road so reported shall be opened, and the proceedings in such cases shall be entered on record, as before directed, and thenceforth such road shall be deemed and taken to be a lawful private road.

36 P.S. §2732 (emphasis added). The standard for granting a private road petition is a finding that "such road is necessary." *Id.* "Necessary" is not defined in the Private Road Act. Our Superior Court has construed Section 12 as follows:

> While the [Private Road] Act does not require an absolute necessity, such as being completely landlocked, the mere inconvenience in the use of an existing road is not enough. *Pocopson Road*, 16 Pa. 15, 17 [(1851)]. The existing road must be of a limited privilege, *Stewart's Private Road*, 38 Pa. Super 339, 342 [(1908)], or 'extremely difficult and burdensome' in its use....

**(continued . . .)**

of law, and whether the board abused its discretion. *In re Forrester*, 773 A.2d 219, 221 (Pa. Cmwlth. 2001).

*Application of Little*, 119 A.2d 587, 589 (Pa. Super. 1956). In short, necessity does not require the property to be "completely landlocked," but necessity is more than "mere inconvenience." *Id.*

A board of view has broad authority to determine whether a private road is necessary. *In re Laying Out and Opening a Private Road*, 592 A.2d 343, 346 (Pa. Super. 1991). "To determine what in fact is necessary the Board naturally has to know as a matter of law what the Act requires, and in this sense the Board must interpret the law." *Application of Little*, 119 A.2d at 589. We review the board of view's findings and conclusions for abuse of discretion. *In re Forrester*, 773 A.2d at 221. The board of view's determination must be affirmed "unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Belleville v. David Cutler Group*, 118 A.3d 1184, 1195 (Pa. Cmwlth. 2015).

The most oft-quoted precedent on whether a private road is necessary is *Application of Little*, 119 A.2d 587. In that case, the landowner did not claim that her property was landlocked or that her existing access by a public road was difficult or burdensome. Rather, she sought to open a private road over an adjacent parcel in order to facilitate her future and inchoate plan for a commercial development. In holding that the board of view did not err in refusing her petition, the Superior Court reasoned that the landowner sought only an "advisory" opinion "that she will have a cheap, easy and direct access to her contemplated development before she goes to the trouble of expending any money on it." *Id*. at 560. This did not constitute necessity.

More recently, in *In re Laying Out and Opening Private Road in Sullivan Township, Tioga County*, 964 A.2d 495 (Pa. Cmwlth. 2009), this Court

9

established the factors to be considered when deciding whether a proposed private road is necessary. In *Sullivan Township*, the members of the Hilltop Hunting Club used an existing private road that passed over the middle of Tri-County Hunting Club's land to reach their land for 40 years. In 2003, Tri-County advised Hilltop it could no longer use the road unless it signed a ten-year lease. In response, Hilltop filed a petition under the Private Road Act, seeking continued use of the existing road over Tri-County's property. The board of view granted the petition, and the trial court confirmed the board's report. This Court affirmed the trial court.

In doing so, we acknowledged that Hilltop owned, by deed, a right-of-way for ingress and egress to a public road over another landowner's parcel. However, the evidence showed that Hilltop's exercise of this property right was not feasible. When determining necessity, we held that the factors to consider were the cost, topography of the land, and environmental consequences of constructing a new road to Hilltop's land. The presence of the existing roadbed across Tri-County's parcel that could be opened without additional construction was specifically held to be an important factor in this determination. *Id.* at 504. We held that Hilltop's land was effectively landlocked because there was no realistic access to Hilltop's land other than by the existing private road across Tri-County's property.

Corl contends that *Application of Little* is dispositive because it established that mere inconvenience does not demonstrate necessity. He contends that because the Adamses can access some part of their property by Star Road, they are not landlocked.[9] This argument cannot be squared with either the Board's

---

[9] Notably, the landowner in *Application of Little* had full vehicle access to a public road.

findings or the legal principles expressed in *Application of Little*, which established that where the existing access is "extremely difficult and burdensome," necessity is shown. The Board found that the closest paved and public road to any part of the Adamses' parcel is Holly Hill Road. Star Road, by contrast, is a dirt road that was found to be "more narrow and inhospitable than the route from Holly Hill Road." Board Report, 8/31/2015, at 6.[10] Further, the construction of a new road to the crest of the Adamses' property would be so costly as to render the Adamses' "land indeed landlocked and otherwise inaccessible." *Id.* In short, the principles expressed in *Application of Little* favor the Adamses, not Corl.

The trial court held that *Sullivan Township* was dispositive on necessity, and we agree. As in *Sullivan Township*, the Adamses do not seek to construct a new road on Corl's land but only to use an existing roadbed. In *Sullivan Township*, the evidence showed that the cost of constructing a new road up an incline of 220 feet was estimated at between $10,000 and $60,000, which was cost-prohibitive. Here, the Board found that building a new road up an incline of 1,000 feet at an estimated cost of over $100,000 was cost-prohibitive. The factors identified in *Sullivan Township*, *i.e.*, cost, topography and the placement of the private road over an existing roadbed, apply with equal force here.

The dissent argues that *Sullivan Township* is distinguishable because the costly and difficult alternative access rejected by the board of view did not involve land owned by the petitioner, Hilltop. This is not strictly accurate. Hilltop had a right by deed to construct a new private road on the land in question, which

---

[10] The dissent challenges this quotation as a "misinterpretation." The Board's finding speaks for itself and is set forth, in full, on page 6, *infra*. Corl does not claim in his appeal that Star Road is "hospitable."

11

was found not feasible by reason of cost and topography. Real property interests take a variety of forms, not just ownership by fee simple title.

The trial court's holding is also consistent with *In re Private Road in Union Township*, 611 A.2d 1362 (Pa. Cmwlth. 1992). In *Union Township*, the landowners had direct access by a public road to the western half of their property. They also had an easement over adjacent property from another public road to access the eastern half of their land for timbering. The eastern and western halves of the property were separated by a ravine measuring 80 feet deep and several hundred feet wide. The landowners petitioned to open a private road for more complete access to the eastern portion of their property. The board of view found

> necessity for opening a private road to allow [landowners] to use their landlocked land located on the east side of the [ravine] on the ground that the easement by prescription granted by the trial court in the 1987 equity action [was] limited in size and use and that the cost of constructing a bridge across the [ravine] would be prohibitive.

*Id.* at 1364. The board of view recommended the private road be laid out over the existing prescriptive easement to a width of twenty feet. The trial court confirmed the board's report, and this Court affirmed the trial court.

As in *Union Township*, the Adamses do not have access to the western part of their parcel. Star Road does not provide access to the mountainous portion of the Adamses' parcel. As in *Union Township*, topography presents a serious impediment. Instead of a ravine, the Adamses confront a steep and wooded 1,000-foot incline. In *Union Township* the board of view found that the cost of

12

constructing a bridge across the ravine was prohibitive.[11]  Likewise here, the Board found that the cost of improving the logging trail to reach the mountainous part of the Adamses' land was not economically feasible.

The dissent relies upon the discussion in *Mazzante v. McClintock*, 976 A.2d 648 (Pa. Cmwlth. 2009), in which the trial court refused to appoint a board of view because the landowner's pleading was inadequate.  The landowner's petition admitted that he had access to his property from a public road and did not plead facts to show necessity.   A trial court's decision to deny appointment of a board of view is based solely on the pleading.  *Pope v. Muth*, 481 A.2d 355, 356 (Pa. Super. 1984).  Where the pleading is sufficient, it is the board of view that gathers the facts and decides whether the opening of a private road is "necessary" under the Act.  *Id*.  Here, the pleading was sufficient.  Accordingly, the Board of View then collected the evidence and found that the Adamses were effectively landlocked.  *Mazzante* is inapposite because there was no fact finding by a board of view.

The dissent contends that the Board improperly focused on the difficulty of converting the *logging trail* on the Adamses' property into an access road.  However, *Union Township* considered the same problem, *i.e.*, the difficulty of construction on the petitioner's land.   The ravine in *Union Township* is comparable to the 1,000-foot incline here.  In both cases, the prohibitive cost of transforming the geographical features into "realistic access" satisfies the necessity standard enunciated in *Little*, 119 A.2d at 589.[12]

---

[11] Notably, the "cost" was not identified in specific dollar amounts in *Union Township*, 611 A.2d at 1364 (board's finding of necessity upheld because "cost of constructing a bridge across the Whetstone Ditch would be prohibitive.").

[12] The dissent states that Adams "admitted that he had 'no problem' accessing his property." Dissenting, slip op. at 6 n.5.  The colloquy follows:

**(Footnote continued on the next page . . .)**

The Board's decision is consistent with our precedent on necessity. The Board found that Star Road offers, at best, extremely difficult access because the logging trail cannot be feasibly converted into a private road given the mountainous topography. *Sullivan Township*, 934 A.2d 495. For access to be feasible it must provide access to the entire parcel. *Union Township*, 611 A.2d at 1364. We hold that the Board did not abuse its discretion in holding that opening the Roadway for use by the Adamses was necessary.

Proving necessity does not end the inquiry. Our Supreme Court, in *O'Reilly*, 5 A.3d 246, held that the taking of private property for a private purpose is inconsistent with the United States and Pennsylvania constitutions. The Supreme Court did not declare the Private Road Act facially unconstitutional but, rather, clarified that the opening of a private road under the Private Road Act is

---

**(continued . . .)**

[Counsel]: But you are able to get on this road [Star Road] right to your property, is that correct, to the edge of your property?

[Adams]: To the edge of my property, yes, a thousand foot short in elevation and a mile to get up to where I want to be.

[Counsel]: Yeah. Where you talk about a thousand foot short you mean –

[Adams]: A thousand-foot elevation.

[Counsel]: After this road meets your property if you wanted to go up to the top of the mountain you'd have to traverse that thousand feet?

[Adams]: Yes, sir.

[Counsel]: *But you have no problem getting to your property down below?*

[Adams]: *No problem at that point, no. It's from there on up it's –*

[Counsel]: Okay.

[Adams]: -- over a mile long –

[Counsel]: Okay.

[Adams]: -- and it's very hazardous.

N.T. 30-31; R.R. 69a-70a (emphasis added).

subject to the constitutional restrictions that govern a taking under eminent domain. *Id.* at 258. Accordingly, the opening of a private road must have a public purpose, which exists where the public is the "primary and paramount beneficiary of the taking." *Id.* (*citing Middletown Township v. Lands of Stone*, 939 A.2d 331, 337 (Pa. 2007)).

The Adamses argue that the primary and paramount beneficiary of the Roadway is the public because it allows Chesapeake to supply natural gas to the public. Additionally, the Adamses argue that the Roadway will be used by hunters to access the Adamses' 231-acre parcel, which also serves the public. The Adamses concede that their use of the Roadway will allow them to construct a seasonal home, but that fact does not vitiate the overriding public purpose of the Roadway.

Corl responds that the beneficiary of the Roadway is a private corporation, Chesapeake. Allowing the Adamses access to the Roadway will provide a private benefit to them, not the public. As to the Adamses' argument that opening the private road will advance game management, Corl responds that hunters can access the Adamses' property on foot.

The Board found a public purpose for the opening of the Roadway. It relied upon *Westrick v. Approval of Bond of Peoples Natural Gas Co.*, 520 A.2d 963, 965 (Pa. Cmwlth. 1987), which held that the transportation and supply of natural gas constitutes a public use. The Board also noted that a taking does not lose its public character merely because a "private interest may also be benefited." *Belovsky v. Redevelopment Authority of Philadelphia*, 54 A.2d 277, 283 (Pa. 1947). The trial court agreed with the Board's public purpose analysis. It also found that the Roadway will provide a public benefit because the Adamses have

15

entered into a Public Access Program Cooperative Agreement with the Game Commission that will give hunters access to the Adamses' property.

Game and wildlife are renewable natural resources.[13] The Pennsylvania Constitution requires the Commonwealth to conserve and maintain natural resources for the benefit of all people.[14] The legislature charged the Game Commission with the duty to "protect, propagate, manage and preserve" game and wildlife populations throughout the Commonwealth. 34 Pa. C.S. §322(a). In executing this duty, the Game Commission is authorized to use hunting and trapping as means of managing wildlife populations. 34 Pa. C.S. §103(b). One way the Game Commission ensures adequate population management is through cooperative agreements with private landowners. 34 Pa. C.S. §323 ("The [Game C]ommission may enter into cooperative agreements with any…individual…*to further the programs of the commission*.") (emphasis added). Under these agreements, the parties work in concert to improve public hunting opportunities and wildlife habitats on the enrolled property.

---

[13] Section 2161(a) of the Game and Wildlife Code states, in pertinent part:

> The proprietary ownership, jurisdiction and control of game or wildlife living free in nature is vested in the Commonwealth by virtue of the continued expenditure of its funds and its efforts to protect, propagate, manage and preserve the game or wildlife population *as a renewable natural resource of this Commonwealth*.

34 Pa. C.S. §2161(a) (emphasis added).

[14] Article I, Section 27 of the Pennsylvania Constitution reads:

> The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them *for the benefit of all the people*.

PA. CONST. art. I, § 27 (emphasis added).

The Game Commission entered into a Cooperative Agreement with the Adamses to allow deer hunting on their entire 231-acre parcel. Cooperative Agreement; R.R. 99a. Corl argues that hunters can access the Adamses' property on foot from Star Road. However, the Cooperative Agreement specifically allows hunters to access all 231 acres of the Adamses' parcel and contemplates that they will do so by vehicle. *Id.* The logging trail simply does not offer this contemplated access to the Adamses' land. The Roadway does. We agree with the trial court that opening the Roadway will allow hunters to reach all of the Adamses' property and assist in the management of the deer population, which principally benefits the public.

The Board found that the "taking" from Corl was too minimal to warrant an award of compensation, and Corl does not challenge that holding.[15] The extent of a taking in a Private Road Act case is relevant and should be a factor when considering the primary public purpose required by *O'Reilly*. Indeed, given the lack of feasible access to their land, it is the Adamses who will suffer a taking of the use and enjoyment of their land if they are denied use of the existing Roadway. In this context, we discern no abuse of discretion in the trial court's holding that opening the Roadway for use by the Adamses satisfies the public purpose test established by our Supreme Court in *O'Reilly*.

For all these reasons, we affirm the order of the trial court.

_____
MARY HANNAH LEAVITT, President Judge

---

[15] In land use cases, the extent of a taking by zoning regulation is a relevant consideration as established in *Hertzberg v. Miryam's*, 721 A.2d 43 (Pa. 1998).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Petition of Burton R. Adams : 
and Joanne M. Adams, his wife :
 : No. 863 C.D. 2016
Appeal of: William Dittmar and :
James M. Corl :

# **O R D E R**

AND NOW, this 21st day of September, 2017, the order of the Court of Common Pleas of the 44th Judicial District, Sullivan County Branch dated April 6, 2016 in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: | : | |
| | : | |
| Petition of Burton R. Adams | : | No. 863 C.D. 2016 |
| and Joanne M. Adams, his wife | : | ARGUED: December 15, 2016 |
| | : | |
| Appeal of: William Dittmar and | : | |
| James M. Corl | : | |

BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE JULIA K. HEARTHWAY, Judge

DISSENTING OPINION BY
JUDGE HEARTHWAY                    FILED: September 21, 2017

Because Burton Adams (Mr. Adams) and Joanne Adams (together, Adamses) already have access to their property, albeit not the portion of their approximately 231 acre parcel they desire to access for the purpose of constructing a home or cabin at the crest of his property, and because the Adamses have not established that the public is the primary and paramount beneficiary of the private road they seek to open, I respectfully dissent.

The Board of View (Board) found that the Adamses' land was effectively landlocked because the only other means of access to the crest of their land "would be by way of an approximately one mile long unimproved logging trail located off of Star Road that involved an extremely steep upward and winding 1000 foot incline …." (Board's 8/31/15 Findings No. 12(h).) The Board observed the access via Star Road to be "significantly more narrow and inhospitable than the

route from Holly Hill to the Roadway" and stated improvement of the logging trail would be "prohibitively expensive and arduous for the Petitioners' [sic] to have effectively and efficiently constructed and would not be financially feasible or cost-effective." (Board's 8/31/15 Findings No. 12(h).) The Board found the "Roadway to be the shortest, safest, most convenient, accessible and reliable current means of access …." (Board's 8/31/15 Findings, No. 22.) Accordingly, the Board concluded that the Adamses should be granted access over Corl's land "for the stated purpose of constructing a seasonal cabin …." (Board's 8/31/15 Findings, No. 24.) It is apparent from the Board's decision that the Board was evaluating the Adamses' ability to access the top portion of their property by means of the logging trail.[1]

While initially the parties agreed that the site visit would constitute the basis for the Board's decision and waived a hearing, the trial court remanded the matter to the Board to create a record. (R.R. at 42a.) The testimony and record on remand cannot be ignored.

---

[1] The Adamses admit in their brief that the alternative means of access evaluated by the Board is actually all on their land. (Adamses' brief at 4.)

I respectfully submit that the Majority's statement that the Board found that access over Star Road itself is "'more narrow and inhospitable than the route from Holly Hill Road'" is a misinterpretation. (Majority opinion at 10-11 quoting Board Report, 8/31/2015 at 6.) Instead, the Board is actually referring to the logging trail. The Board explained:

> … the only other means of access to their land that was identified to the Board would be by way of an approximately one mile long unimproved logging trail located off of Star Road that involved an extremely steep upward and winding 1000 foot incline to the crest of the Petitioners' land. Access via Star Road …..

(Board's 8/31/15 Findings No. 12(h), emphasis added.) The phrase "access via Star Road" refers to the access in the preceding sentence, i.e., the logging trail located off of Star Road.

Significantly, Mr. Adams admitted that Star Road abuts his property at the base and that he has access to the edge of his property via Star Road. (R.R. at 69a-70a, N.T. at 30-31.) The Majority even clarifies that "[a]pproximately one-half mile after it leaves Route 87, Star Road meets the southern and eastern boundaries of the Adamses' parcel." (Majority opinion (op.) at 2.) Mr. Adams, however, is dissatisfied with the location of his current access, which he describes as "a thousand foot short in elevation and a mile to get up to where I want to be." (R.R. at 69a, N.T. at 30.) Mr. Adams explained that he wanted to be at the top of the mountain in order to build a cabin where "it has a good view." (R.R. at 61a, N.T. at 22; *see* R.R. at 72a, N.T. at 33.) Mr. Adams admitted he has "no problem" getting to his property "down below," but stated that it is from there on up that it is over a mile long and very hazardous.[2] (R.R. at 70a, N.T. at 31.) Additionally, while Mr. Adams described Star Road as an "abandoned" road, he testified that Star Road is now a "private road" that reverted back to the previous owners, which includes the Adamses. Significantly, Mr. Adams stated that he is able to use Star Road.[3] (R.R. at 67a-68a, N.T. at 28-29.) Indeed, the parties and the Board drove

---

[2] When asked whether there would be any problem building the house down below, Mr. Adams replied, "I don't want to build it down below. I want to build it up on top…. I could build a house a lot of places but I want to build it on top of the mountain." (R.R. at 72a, N.T. at 33.)

[3] The Majority states the abandonment of Star Road is not a fact in dispute. This is misleading. While Mr. Adams said Star Road was "abandoned," and Corl also used that term in his exceptions, it is unclear what is meant by the term "abandoned," and the evidence is incomplete in this regard. Mr. Adams' testimony concerning Star Road's status and his ability to use Star Road is consistent with the law of this Commonwealth. When the public's right to use a road is validly terminated, it is established as a private road with a right of access by the abutting owners, and the property consisting of the road reverts automatically and simultaneously to the abutting owners. *In re City of Altoona*; *cf. Schantz v. Bahry*, 43 A.3d 536 (Pa. Cmwlth. 2012) (finding that where township ordinance vacated road as a public road and established it as a **(Footnote continued on next page…)**

to the Adamses' property on Star Road when the Board conducted its view. (R.R. at 66a, N.T. at 27-28; R.R. at 82a, N.T. at 43.)

In essence then, what the Adamses seek is a second private road from which to access a different portion of their property. Thus, the question this Court is faced with is whether the Private Road Act[4] compels another landowner to open up his private land to allow an adjoining landowner access to a specific desired portion of his or her property when that landowner already has access to his property. Relevant precedent, however, indicates that a board of view should evaluate whether one has access **to** one's property rather than whether one has access to a desired portion of one's property, such as the crest of the mountain, as the Board did here. Additionally, as will be explained later, the Adamses are not entitled to open a private road over Corl's property because they have not established that the public is the primary and paramount beneficiary of the opening of the Roadway, as required by our Supreme Court's decision in *In re Opening a Private Road for Benefit of O'Reilly*, 5 A.3d 246 (Pa. 2010).

Section 12 of the Private Road Act authorizes the opening of a private road if it "shall appear by the report of the viewers to the court directing the view, that such road is necessary …." 36 P.S. § 2732. The test is necessity, but the

---

**(continued…)**

private road, landowner had the right to access private road that crossed neighbor's land but access was limited to only that area within the road's right-of-way).
    [4] Act of June 13, 1836, P.L. 551, *as amended*, 36 P.S. § 2731 – 2891.

Private Road Act does not define this term. *In re Packard*, 926 A.2d 557 (Pa. Cmwlth. 2007).

> While the [Private Road] Act does not require an absolute necessity, such as being completely landlocked, the mere inconvenience in the use of an existing road is not enough. *Pocopson Road*, 16 Pa. 15, 17 [1851]. The existing road must be of limited privilege, *Stewart's Private Road*, 38 Pa. Super. 339, 342 [1908], or "extremely difficult and burdensome" in its use….

*Application of Little*, 119 A.2d 587, 589 (Pa. Super. 1956).

The Majority agrees with the Board and the Adamses that *In re Laying Out and Opening Private Road in Sullivan Township, Tioga County*, 964 A.2d 495 (Pa. Cmwlth. 2009), provides the most relevant instruction. Additionally, the Majority relies on *In re Private Road in Union Township*, 611 A.2d 1362 (Pa. Cmwlth. 1992), which was not cited by either party. While at first glance, these cases may appear to be on point, I find them to be distinguishable.

In *Sullivan Township*, the only existing road providing access to the landowner's property was the proposed private roadway. The Board viewed several alternative accesses, none of which actually existed but were subject to an easement, and found that none was feasible due to topographical and cost concerns. The board of view found that the alternative access did not effectively provide access **to any part** of the landowner's property. The board of view's focus was access **to** the landowner's property, not access across his property. Here, the Board mistakenly focused on the cost and topography concerns

JKH - 5

associated with accessing a specific portion of the Adamses' property by means of a logging trail which runs **across** the Adamses' property.[5]

And, while *Union Township* appears at first glance to allow one to have a private road opened in order to access a specific portion of his property, that case is different from the case before us, both factually and procedurally. In *Union Township*, the landowner had access to the western portion of his property but alleged that the eastern portion of the property was landlocked because the property was divided by a ravine 80 to 100 feet deep and several hundred feet wide. Although the topography of the Adamses' property presents challenges for accessing the crest of the property, Mr. Adams admitted that he has walked up to the top of his property. (R.R. at 70a-71a, N.T. at 31-32.) The facts here as a matter of law are not comparable to *Union Township* where one portion of the property was truly landlocked and physically separated from another portion. Additionally, procedurally, on appeal to this Court, the question of necessity was **not** at issue in *Union Township*.[6]

---

[5] It was only improvement of the logging trail across the Adamses' property that the Board found to be prohibitively expensive and arduous. The Majority states that Corl did not offer rebuttal testimony regarding the cost or alternative access, but Corl did not Corl have to do so. It was the Adamses' burden to prove necessity; however, Adams admitted he had "no problem" accessing his property. (R.R. at 70a, N.T. at 31.) Contrary to the Majority's implication, the burden did not shift to Corl.

[6] In *Union Township*, the issues before this Court were (i) whether the doctrines of collateral estoppel and res judicata barred the private road proceedings by virtue of a prior equity action wherein the landowner sought an easement by prescription, which was granted, and an easement by necessity, which was denied and (ii) whether the owners of the property on which the road was being opened were entitled to a jury trial on the issue of damages.

In contrast to those case, in *Mazzante v. McClintock*, 976 A.2d 648 (Pa. Cmwlth. 2009), we addressed a situation factually similar to the matter before us, and notably ruled it was distinguishable from *Union Township*. In *Mazzante*, this Court upheld the denial of a petition for appointment of a board of view to open a private road where the landowner already had access to his property but sought to open a private road for access across his property to a different part of his property. The landowner stated that he needed the proposed access so that he and his contractors could get to a specific portion of his property without traversing two difficult and dangerous logging roads in order to build a cabin. This Court upheld the denial of a petition for appointment of a board of view. In doing so, we ruled that the facts in *Mazzante* as a matter of law were not comparable to *Union Township* in which one portion of the property was truly landlocked and separated from another portion. *Mazzante*, 976 A.2d at 655. We noted that the landowner in *Mazzante* "admitted to a degree of access across his property but wishe[d] to avoid the expense that would be required to improve that access." *Mazzante*, 976 A.2d at 655. We held that such desires did not rise to the "strictest necessity" required under the Private Road Act. *Id.*; *see also Soska v. Bishop*, 19 A.3d 1181 (Pa. Cmwlth. 2011) (upholding denial of a petition to open a private road for failure to establish strict necessity where petitioners admitted that a driveway on their property provided access from their residence to the public road but they found the use of their driveway to be burdensome and inconvenient in its current condition). Further, we stated that precedent does "not establish a principle that whenever an owner alleges that a road *across* his or her property is difficult or burdensome to use that the owner has shown entitlement to appointment of a board of view under the [Private Road] Act." *Mazzante*, 976 A.2d at 654 (emphasis in original).

While the Adamses may be entitled to access *to* their property, they are not entitled to the access of their choice. The Board overlooked the Adamses' admitted access to their property via Star Road, and instead, focused on the access across their property via the logging trail to the crest of their property. The Board evaluated whether the Adamses have access **over** their property to a **specific portion** of their property, rather than determining whether a private road is necessary for access **to** the Adamses' property. Such misplaced focus constitutes an error of law and an abuse of discretion. Additionally, the Board, in concluding that the Adamses should be granted access over Corl's property, found that the "Roadway to be the shortest, safest, most convenient, accessible and reliable current means of access …." (Board's 8/31/15 Findings No. 22.) However, whether something is the "shortest, safest, most convenient, accessible and reliable current means of access" also is not the correct legal standard. The Board incorrectly substituted a new legal standard for the standard of necessity as required by the Private Road Act. This, too, was an error of law.

The Majority states, "Star Road may allow the Adamses to reach the base of their property, located in the valley, but it provides no meaningful access to the mountainous part, which comprises most of their 231-acre parcel." (Majority op. at 11.) I respectfully submit that "meaningful" access also is not the correct legal standard under the Private Road Act, which requires necessity. Nonetheless, even accepting the Majority's statement for the sake of argument, the top or mountainous portion of the Adamses' property is "landlocked" only by the Adamses' own property. The fact that the Adamses have difficulty navigating within their own property does not rise to the strictest necessity allowing them to

open a private road over another's property. The effect of the Board's and Majority's decisions is to allow one to establish necessity simply by showing one lacks "meaningful" access to **all** corners of his property. This is a dangerous precedent that erodes private property rights.

The Private Road Act must be strictly construed. *Soska*. Additionally, "'taking private property for private use is not favored.'" *Soska*, 19 A.3d at 1188 (*quoting In re Private Road in Speers Boro II*, 11 A.3d 902, 906 (Pa. 2011)); *see also In re Sunoco Pipeline, L.P.*, 143 A.3d 1000, 1020 (Pa. Cmwlth. 2016) (Brobson, J. dissenting) (stating "[p]rivate property rights have long been afforded especial protection in this Commonwealth"). I simply do not believe the precedent interpreting the Private Road Act authorizes a board of view and this Court, under these circumstances, to allow a landowner to take a neighbor's private property for the purpose of acquiring additional, more convenient access to another portion of his property.

Moreover, even where it is determined that one is effectively landlocked, that no longer ends the inquiry, as it did when *Sullivan Township* and *Union Township* were decided. As a result of our Supreme Court's decision in *O'Reilly*, a landowner who seeks to take another's property in order to open a private road pursuant to the Private Road Act must now also establish that "the public is fairly regarded as the primary and paramount beneficiary" of any such taking. *O'Reilly*, 5 A.3d at 258. I agree with the Majority that the relevant inquiry is whether opening the Roadway **to the Adamses** will benefit the public.

Therefore, Chesapeake's use is irrelevant and cannot, as a matter of law, support a finding of a public benefit, as the Board and trial court concluded.

With respect to the remaining proffered public use, allowing hunters to access the Adamses' property based on the Cooperative Agreement with the Pennsylvania Game Commission (Commission), I find the record to be insufficient to support a finding that the public is the primary and paramount beneficiary of the opening of the Roadway. The Board made no findings concerning the use of the Adamses' property by hunters. In fact, the Board deemed this evidence to be irrelevant because the Adamses did not enroll their property with the Commission until December 15, 2014, or about twenty-two months after they filed their petition to open the Roadway. (Board op. at 5, n. 5.) Notably, the Adamses also did not enroll their property with the Commission until **after** the Board's initial decision and **after** Corl filed his exceptions, which included an assertion that no public benefit was found, and **after** the trial court ordered that the matter be reopened for the purpose of establishing a record for potential appeal purposes. (R.R. at 84a, N.T. at 45; *see* R.R. at 27a; R.R. at 42a, N.T. at 3.)

Moreover, "the **true** purpose must primarily benefit the public." *Middletown Township v. Lands of Stone*, 939 A.2d 331, 337 (Pa. 2007) (emphasis in original). The evidence is clear that the use of the Adamses' property by hunters is *de minimis*, and therefore, the public cannot fairly be regarded as the primary and paramount beneficiary of the opening of the Roadway. Rather, the primary and paramount beneficiary of the opening of the Roadway would be the Adamses for the stated purpose of building and accessing a cabin at the crest of the mountain

with scenic views. The Majority broadly construes the phrase primary and paramount beneficiary to include the hunting here. However, because the opening of a private road is in derogation of a private right, this Court must strictly construe the Supreme Court's mandate that the public must be the primary and paramount beneficiary of the opening of a private road. *See O'Reilly* (evaluating proceedings under the Private Road Act pursuant to eminent domain principles); *Cf. Middletown Township*, 939 A.2d at 337 (stating that "the exercise of the right of eminent domain is necessarily in derogation of a private right, and the rule in that case is that the authority is to be strictly construed")(internal quotations and citations omitted).

I also respectfully disagree with the Majority's statement that the "extent of a taking in a Private Road Act case is relevant and should be a factor when considering the primary public purpose required by *O'Reilly*." (Majority op. at 16.) This statement conflates the concepts of determining, in the first instance, whether there was a taking, and if so, the amount of compensation owed. A taking is a taking. The extent of the taking is relevant only to determine the amount of compensation owed.

This Court is bound to follow our Supreme Court's decision in *O'Reilly*. While it has been said that *O'Reilly* "for all intents and purposes rendered the [Private Road] Act constitutionally unenforceable,"[7] notably, the legislature has not amended the Private Road Act in response to the Supreme

---

[7] *In re O'Reilly*, 100 A.3d 689, 698 (Pa. Cmwlth. 2014) (*O'Reilly II*) (Leadbetter, J. concurring).

Court's decision. *O'Reilly* "establishes a framework for balancing the competing constitutional interests" of property owners.[8] "Requiring that the public must be the 'primary and paramount beneficiary of the taking' … is an important Constitutional limitation on a private citizen's ability to take neighboring property."[9]

The Majority's ruling that allowing hunters to access a section of one's property means that the public is the primary and paramount beneficiary is too broad of an interpretation. This broad interpretation, combined with existing case law and the Majority's holding which allows one to open a private road to access a specific portion of one's property, sets a significant precedent. I respectfully submit that the Majority's ruling erodes private property rights for personal convenience and a tenuous public benefit. Under the Majority's holding, had the situation been reversed, Corl could have sought to open a private road across the Adamses' property to get to the section of Corl's property where the gas pad needed to be located for "a public purpose." *See Westrick v. Approval of Bond of Peoples Natural Gas Co.*, 520 A.2d 963 (Pa. Cmwlth. 1987) (stating the transportation and supply of natural gas constitute a public use). Under the majority's ruling these situations are arguably no different.

---

[8] *Id.* at 699 (Cohn Jubelirer, J. concurring).

[9] *Id.* I also note that in *O'Reilly*, the landowner alleged that he was landlocked as a result of the Commonwealth's prior exercise of eminent domain to build an interstate highway. The Supreme Court remanded the matter, noting that relevant details were not developed concerning the purported interrelationship between the Commonwealth's exercise of eminent domain and the landowner's subsequent invocation of the Private Road Act.

Accordingly and respectfully, I would reverse.


_____
JULIA K. HEARTHWAY, Judge