**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | |
|---|---|
| IN RE: PETITION OF BURTON R. ADAMS AND JOANNE M. ADAMS, HIS WIFE | : No. 9 MAP 2018<br>:<br>: Appeal from the Order of the<br>: Commonwealth Court dated<br>: September 21, 2017 at No. 863 CD |
| APPEAL OF: WILLIAM DITTMAR AND JAMES M. CORL | : 2016 Affirming the Order of the<br>: Sullivan County Court of Common<br>: Pleas, Civil Division, dated April 6,<br>: 2016 at No. 2013-CV-90.<br>:<br>: ARGUED: December 5, 2018 |


**OPINION**


**JUSTICE MUNDY**                                    **DECIDED: July 17, 2019**

In this appeal by allowance, we consider whether Appellees, Burton R. Adams and Joanne M. Adams, demonstrated that opening a private road over the property of Appellant, James M. Corl, was necessary under the Private Road Act, 36 P.S. §§ 2731-2891 (Act). We conclude the Adamses have not demonstrated necessity as a matter of law based on their contemplated future use of their property, when, as in accordance with the Act, necessity must be based on the existing use of the property. Accordingly, we reverse the Commonwealth Court's order affirming the trial court's confirmation of the Board of View's (Board) report recommending the grant of a private road in favor of the Adamses.

In 1967, the Adamses purchased a one-half interest in a parcel in Sullivan County from Mr. Adams's uncle.[1]  N.T., 7/24/15, at 36.  Mr. Adam's father owned the other one-half interest.  *Id.*  On February 22, 1984, the Adamses acquired Mr. Adam's father's one-half interest for $1.00.  Deed, 2/22/84, at 1.  The Adamses' parcel, number 02-080-0001, consists of 230.91 acres with a mountain situated on its northern portion.  N.T., 7/24/15, at 7, 42.  No public roads abut or enter into the Adamses' parcel.  The nearby roads include State Route 87 some distance south of this parcel; Star Road, running north from Route 87 to the east of the parcel; and Holly Hill Road, extending north from Route 87 to the west of the parcel.[2]

However, the Adamses own two adjacent properties bordering the subject parcel on the north at the foot of the steep side of the mountain (parcel numbers 02-094-0001 and 02-080-0003).   Through parcel 02-094-0001, the Adamses have had access to the subject parcel from the north via Star Road.  From Star Road, an unimproved dirt road travels west.  This road was once a township road but was abandoned and reverted to a private road.  The Adamses' parcel 02-080-0003 lies on one side of this now-private road.  N.T., 7/24/15, at 27-30, 44.  The now-private road then enters the Adamses' parcel 02-094-0001 and connects with an unimproved logging skid road at the base of the mountain on the northern side of the subject parcel.  This logging road is approximately a mile long and has a 1,000-foot elevation change as it travels straight up to the top of the mountain.

---

[1] The Adamses do not reside on this parcel; their residence is located elsewhere.

[2] The parties did not provide any maps of the area.  However, as the Commonwealth Court noted, searching for "Holly Hill Road, Dushore, PA 18614" on Google Maps (www.google.com/maps) provides an aerial view of the area; and a more detailed terrain view is available through Google's "Earth" program.  *In re Petition of Adams*, 170 A.3d 584 (Pa. Cmwlth. 2017).  Additionally, the Sullivan County tax parcel map is available online at www.sullivancounty-pa.us/offices/gis.  For ease of discussion, we include Corl's parcel numbers as displayed on the tax parcel map.

Using this access point, Mr. Adams has hunted on the property all his life by walking from the bottom up the mountain. *Id.* at 31-32. However, Mr. Adams estimated that improving this logging road to facilitate vehicular access up the mountain road would cost "over hundreds of thousands of dollars." N.T., 7/24/15, at 24.

To the west and south, the Adamses' parcel borders property owned by Appellants William Dittmar and James M. Corl (collectively, Corl).[3] Corl's parcel, number 02-081-0038, consists of approximately 250 acres. Deed, 6/20/07, at 1. Holly Hill Road runs north from Route 87 and terminates on Corl's property to the west of the Adamses' parcel.

Where Holly Hill Road ends, an unpaved and unimproved travelway begins. This travelway is maintained by Chesapeake Oil & Gas Company (Chesapeake), pursuant to access agreements with Corl and the Adamses. Supplement to Report of the Board of View at 4-5. For the right to construct and use this travelway, Chesapeake paid Corl and the Adamses $5.00 per foot of road. *Id.* at 5 n.4. Presumably, the road, labelled "TA Burts Lane" on the Sullivan County tax map, was constructed by agreement of the parties to provide access to a well pad to accommodate the extraction of natural gas inuring benefits to both parties. From the end of Holly Hill Road, the 22-foot wide Chesapeake travelway runs east 2,136.29 feet (½ mile) over Corl's property, then it enters the Adamses' parcel, continues southeast for approximately 3,387 feet over the Adamses' parcel, and enters other land Corl owns (parcel number 02-080-0002) where Chesapeake's natural gas well pad is located. *Id.*; N.T., 7/24/15, at 17-18. The 2,136.29-foot portion of the travelway on Corl's property is the subject of this case. Chesapeake has a right of way over the entire travelway for as long as the gas pad is active, and Chesapeake's subcontractors use the road daily for drilling activity. *Id.* at 13.

---

[3] After the Board of View's February 21, 2014 report, Mr. Dittmar conveyed his entire interest in the property to Mr. Corl. Trial Ct. Op. at 2 n.2.

After Chesapeake completed the travelway, Corl permitted the Adamses to access the 2,136.29-foot portion of the travelway (Roadway) that connects Holly Hill Road with the portion of the Chesapeake travelway on the Adamses' property. *Id.* at 15. However, after approximately two and one-half years, Chesapeake installed two gates on the travelway at Corl's request which discontinued the Adamses' access to the Roadway.[4] *Id.* According to Mr. Adams, Corl denied his subsequent request for a right-of-way because Corl believed Mr. Adams was disturbing his deer population. *Id.* at 16. Thus, the Adamses no longer have access to their parcel from Holly Hill Road.

The Adamses intend to build a house or a cabin for seasonal use on top of the mountain in the northeastern portion of their parcel to take advantage of the scenic views. N.T., 7/24/15, at 22, 40.[5] To facilitate construction vehicle access to the mountaintop, the Adamses prefer to access their property from Holly Hill Road instead of improving the logging skid road they currently access from Star Road. On February 26, 2013, seeking to restore their access from Holly Hill Road via the Roadway, the Adamses filed a petition to open a private road and for appointment of a board of view pursuant to the Private Road Act. Therein, they alleged they "do not have any way whatsoever to access their lands . . . from Holly Hill Road (Colley Township Road T-443) other than to obtain a private roadway over the lands owned by [Corl]." Pet. to Open a Private Road, 2/26/13, at ¶ 7. To remedy this, they sought to have the Roadway opened as a private road pursuant to Section 2731 of the Act, which provides:

### § 2731. Proceedings to open private roads

---

[4] The Adamses have keys to one of the gates, but they do not have keys to the other. N.T., 7/24/15, at 15, 37.

[5] Mr. Adams acknowledged, "I could build a house a lot of places but I want to build it on top of the mountain." N.T., 7/24/15, at 33.

> The several courts of quarter sessions shall, in open court as aforesaid, upon the petition of one or more persons . . . for a road from their respective lands or leaseholds to a highway or place of necessary public resort, or to any private way leading to a highway, . . . direct a view to be had of the place where such road is requested, and a report thereof to be made[.]

36 P.S. § 2731. Further, "[i]f it shall appear by the report of viewers to the court directing the view, that such road is necessary, the said court shall direct what breadth the road so reported shall be opened . . . and thenceforth such road shall be deemed and taken to be a lawful private road." 36 P.S. § 2732.

On April 2, 2013, the trial court appointed a Board of View (Board) to determine the necessity of granting access to the Roadway to the Adamses. The parties agreed the Board would make its decision based on a site view alone, without an evidentiary hearing. Report of the Board of View, 2/24/14, at ¶ 4. On November 18, 2013, the Board conducted a site visit with the Adamses, Mr. Dittmar, and counsel for both parties. *Id.* at ¶ 3.

On February 24, 2014, the Board submitted its report, concluding the Adamses "should be granted unlimited access over and upon [Corl's] land for the stated purpose of constructing and residing in a one-family residence to be constructed upon [the Adamses'] land." *Id.* at ¶ 6. The Board found that the Adamses sought access to the Roadway on Corl's land to build a residential home and "provided no timeframe for such construction." *Id.* at ¶ 5(d). The Board further found the Adamses land was "effectively landlocked" because the alternative access up the logging trail off of Star Road was "extremely steep[,]" was "more narrow and inhospitable than the Roadway," and would be "extremely expensive and arduous" for the Adamses to improve. *Id.* at ¶ 5(f). By comparison, the Board found the Roadway was "the shortest, safest, most convenient, accessible and reliable current means of access, which will result in no discernible injury to [Corl's] Property." *Id.* at ¶ 5(i) (relying on the factors articulated in *In re Laying Out &*

*Opening a Private Rd. in Sullivan Twp., Tioga County*, 964 A.2d 495, 505 (Pa. Cmwlth. 2009)). Finally, the Board concluded Corl was not entitled to compensation because Corl did not request it, and Chesapeake is obligated to pay the maintenance costs of the Roadway. *Id.* at ¶ 7.

On April 28, 2014, Corl filed exceptions to the Board's report, and the trial court remanded the matter to the Board for an evidentiary hearing. At the July 24, 2015 hearing, Mr. Adams was the only witness. Thereafter, the Board issued a supplemental report on August 31, 2015, in which it again concluded the Adamses should be granted access to the Roadway. Supplement to Report of the Board of View, 8/31/15, at ¶ 23. In addition to its prior finding that the Roadway was necessary because the Adamses' parcel was "effectively landlocked," the Board found the public was benefited by Corl allowing Chesapeake to use the Roadway to generate natural gas for public consumption. *Id.* at ¶¶ 12(h), 16, 19 (distinguishing *In re Opening a Private Rd. for the Benefit of O'Reilly*, 5 A.3d 246 (Pa. 2010)). Additionally, the Board found the Adamses' assertion that the taking of the Roadway would serve a public purpose by permitting the general public to hunt on their parcel, which they had enrolled with the Pennsylvania Game Commission's "safety zone program," was irrelevant because the Adamses did not enroll their property in the program until 22 months after they filed the petition to open. *Id.* at ¶ 12(f) n.5. Corl filed exceptions, which the trial court overruled on March 30, 2016. Corl then filed a timely appeal with the Commonwealth Court.

In its opinion in support of its order overruling Corl's exceptions to the Board's report, the trial court concluded the Adamses demonstrated access to the Roadway was necessary. Trial Ct. Op., 6/20/16, at 4. Specifically, the trial court explained that its own site view revealed that the access to the mountaintop via the logging road off of Star Road "contains an extremely steep upward and winding one thousand (1000) foot incline to the

crest of [the Adamses'] land." *Id.* Based on this, the trial court agreed with the Board that the Adamses' parcel is "in fact, landlocked." *Id.*

Additionally, the trial court concluded the opening of the Roadway as a private road for the Adamses would benefit the public in two ways. *Id.* at 5. First, the court held that Corl "created a public use for their once private roadway" by providing Chesapeake with unlimited access to the Roadway. *Id.* According to the trial court, the transportation and supply of natural gas is a public use. *Id.* (citing *Westrick v. Approval of a Bond of the Peoples Natural Gas Co.*, 520 A.2d 963 (Pa. Cmwlth. 1984)). Second, the trial court relied on the agreement the Adamses entered into with the Pennsylvania Game Commission to open their parcel to public hunting. *Id.* Opening the Roadway, the court reasoned, would benefit the public seeking access to the Adamses' parcel to hunt. *Id.* Accordingly, the trial court overruled Corl's exceptions to the Board's report. *Id.*

On appeal, Corl challenged both the necessity of the Adamses' access to the Roadway, given they can currently access their parcel from Star Road, and the public purpose of opening the Roadway to enable the transportation of natural gas. *In re Petition of Adams*, 170 A.3d 584, 590 (Pa. Cmwlth. 2017). The Commonwealth Court affirmed, holding the Board properly exercised its discretion in finding necessity for the Roadway and in concluding the Roadway served a public purpose. *Id.* at 594-95. The court explained it reviews a board's decision on necessity for an abuse of discretion, and it will affirm the board's determination "unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Id.* at 591 (quoting *Belleville v. David Cutler Group*, 118 A.3d 1184, 1195 (Pa. Cmwlth. 2015)).

On the issue of necessity, the court noted that pursuant to the Private Road Act a landowner may open a private road across another's land upon a finding "that such a road is necessary." *Id.* at 590 (quoting 36 P.S. § 2732). Because the Act does not define

"necessary," the Commonwealth Court relied on judicial interpretation that "necessity does not require the property to be 'completely landlocked,' but necessity is more than 'mere inconvenience.'" *Id.* at 591 (quoting *Application of Little*, 119 A.2d 587, 589 (Pa. Super. 1956)).

Applying case law, the Commonwealth Court concluded the Board's decision to open a private road based on necessity was not an abuse of discretion. *Id.* at 591-94. The court first discussed *Little*, in which the landowner petitioned for a private road to facilitate a proposed subdivision and commercial development of her property. *See Little*, 119 A.2d at 588. The *Little* Court noted the landowner did not assert her property was landlocked, and she had access for the present residential use of her land. *Id.* Because the private road she sought was to support a contemplated future use of her property, the *Little* Court concluded she could not demonstrate necessity as a matter of law. *Id.* at 589. The *Little* Court reasoned that the Private Road Act was a form of eminent domain as it permitted the taking of private property for a private use, and courts accordingly had to strictly construe it. *Id.* As such, even though "the Act does not require absolute necessity, such as being completely landlocked, the mere inconvenience in the use of an existing road is not enough." *Id.* Instead, the existing road "must be of a limited privilege . . . or extremely difficult and burdensome in its use" to justify opening a private road over another's land. *Id.* (citations and internal quotation marks omitted). Applying these principles, the *Little* Court rejected the landowner's claim based on a future use because she did not demonstrate strict necessity, reasoning:

> It seems so basic as to require no extended discussion that the necessity be a present one. Contemplated necessities, grounded as they are in but a present opinion of what the future will require, are the weakest kind of material upon which to build a determination that would compel the taking of one [person]'s land for the use of another[.]

*Id.*

The Commonwealth Court rejected Corl's reliance on *Little* to argue that the Adamses demonstrated only a "mere inconvenience," and not a necessity, because they can access their property via Star Road and are not landlocked. *Adams*, 170 A.3d at 592. Instead, the court opined *Little* supports the Adamses' position because the Board found Star Road was "more narrow and inhospitable than the route from Holly Hill Road," which met *Little*'s standard of "extremely difficult and burdensome." *Id.* (quoting Supplement to Report of the Board of View, 8/31/15, at 6). Additionally, the cost of the construction of a new road up the mountain from Star Road rendered the Adamses' parcel effectively landlocked. *Id.* For these reasons, the court concluded *Little* supported the Adamses' argument. *Id.*

The Commonwealth Court then discussed *Sullivan Township*, in which the trial court, based on the board of view's recommendation, opened a private road in favor of Hilltop Hunting Club, Inc. (Hilltop) over the land of Tri-County Sportsmen's Club (Tri-County). *See Sullivan Twp.*, 964 A.2d at 496. Hilltop had built a cabin on its property, which was located near the top of a mountain. *Id.* at 497. Since it acquired its property, Hilltop had accessed it from a road that traversed Tri-County's land. *Id.* However, a title search showed Hilltop did not have a deeded right of way over Tri-County's land because Hilltop's predecessor never owned it. *Id.* Eventually, Hilltop petitioned to open the road over Tri-County's property as a private road, and the board of view granted it after finding there was necessity. *Id.* at 498. On appeal, the Commonwealth Court affirmed. *Id.* at 505. First, the court found there was necessity for the private road even though there was a potential alternative access point via a 1,100-foot power line route next to an electric company's right of way. *Id.* at 503. The court found this power line road would involve a very steep, 220-foot elevation change up the side of the mountain, would be

difficult to travel in bad weather, would cost $30,000-$40,000 to construct, would be costly to maintain, and would interfere with the integrity of the power lines. *Id.* The court also rejected a second alternative proposed 1,600-foot switchback road because it would have runoff and erosion problems, would cost $60,000 to construct, and would be difficult to meet the 25-foot wide limitation for private roads due to the need for runoff ditches. *Id.* Based on these facts related to the alternative access proposals and its conclusion that Hilltop demonstrated its property was essentially landlocked, the Commonwealth Court concluded there was necessity. *Id.* Second, separate from its necessity analysis, the Commonwealth Court concluded the location of the private road over the existing roadbed was proper because it involved no construction costs or environmental impacts and would provide safer access. *Id.* at 505.

Here, the Commonwealth Court analogized *Sullivan Township* and concluded it was dispositive. *Adams*, 170 A.3d at 592. From *Sullivan Township*, the court derived several factors to consider when determining the necessity of the proposed private road compared to alternative routes: cost, topography, environmental impact of new construction, and the availability of an existing roadbed. *Id.* at 591. Applying these factors, the Commonwealth Court analogized this case to *Sullivan Township* and concluded the Adamses demonstrated the necessity of accessing the Roadway. *Id.* at 592. Specifically, the court analogized the alternative routes identified in *Sullivan Township*, which would have been new construction up a 220-foot slope at a cost of $10,000 to $60,000, to the alternative access from Star Road in this case, which also would require new construction up a 1,000-foot elevation change at an estimated cost of over $100,000. *Id.* Compared to this costly, new construction, the court noted the Adamses sought access to an existing roadbed, just as Hilltop had in *Sullivan Township*. *Id.* Accordingly, the Commonwealth Court concluded *Sullivan Township* controlled. *Id.*

Next, the court analogized this case to *In re Private Road in Union Township*, 611 A.2d 1362 (Pa. Cmwlth. 1992). In *Union Township*, the landowners' property was divided by an 80- to 100-foot deep ravine. *Union Twp.*, 611 A.2d at 1363. The landowners had access to the western portion of their property from a public road by a right-of-way across a third party's property. *Id.* To access the eastern portion, the landowners had an easement by prescription for a twelve-foot wide, one lane right-of-way over the Ralston Hunting Club's (Club) property, limited to logging operations. *Id.* To fully access the eastern portion, the landowners petitioned to open a private road over the Club's property. *Id.* The board of view granted the petition, finding the private road was necessary because the eastern portion was landlocked, the easement by prescription was limited in size and use, and the cost of building a bridge across the ravine was prohibitive. *Id.* at 1364. The board recommended the private road use the existing right-of-way over the Club's property and expanded the width of the road to 20 feet. *Id.*

In its appeal to the Commonwealth Court, the Club asserted res judicata and collateral estoppel barred the landowners from petitioning to open a private road because the trial court had previously denied an easement by necessity. *Id.* at 1363. The Commonwealth Court concluded res judicata did not apply because the causes of action have different elements. *Id.* at 1364. Critically, the court explained an easement by necessity arises only when there is unity of ownership between the dominant and servient estates and necessity is created when the land is severed. *Id.* By contrast, in an action to open a private road "the determination of necessity must be based upon present use of the property." *Id.* (citing *Little*, 119 A.2d at 587). Similarly, the Commonwealth Court found collateral estoppel was inapt because the trial court denied an easement by necessity based on a lack of unity of ownership and had not previously adjudicated the issue of necessity. *Id.* at 1365.

Here, the Commonwealth Court found *Union Township* supported the Board's decision because the Adamses faced a similar topographical impediment to accessing the mountainous portion of their parcel, and the Board found the cost of improving the steep logging trail leading to the top of the mountain was prohibitive. *Adams*, 170 A.3d at 593. Based on its application of *Little*, *Sullivan Township*, and *Union Township*, the Commonwealth Court affirmed the Board's conclusion that the Adamses demonstrated necessity for opening the private road. *Id.*

On the second issue, the Commonwealth Court recognized that, in addition to establishing necessity, an order to open a private road must be shown to serve a public purpose. *Id.* at 594 (citing *O'Reilly*, 5 A.3d at 258). Specifically, a taking of private property pursuant to the Private Road Act must satisfy the eminent domain standard that the taking serve a public purpose, which means the public must be the "primary and paramount beneficiary[.]" *Id.* (quoting *O'Reilly*, 5 A.3d at 258). The Commonwealth Court noted the Board and the trial court concluded Chesapeake's use of the Roadway to transport and supply natural gas was a public use, but the Commonwealth Court did not further discuss whether Chesapeake's use of the Roadway could satisfy the public purpose requirement. *Id.* Instead, the court concluded that the Adamses' agreement with the Pennsylvania Game Commission to open their land to deer hunting primarily benefits the public by managing the deer population. *Id.* at 595. Further, the court noted the agreement contemplated hunters would have access to the entire parcel by vehicle, which was not possible from Star Road. *Id.* Accordingly, the Commonwealth Court affirmed the trial court's conclusion that the taking served a public purpose. *Id.*

In a dissenting opinion, Judge Hearthway disagreed that the Adamses demonstrated either the necessity of a private road or its public purpose. *Id.* at 595 (Hearthway, J., dissenting). On the issue of necessity, Judge Hearthway highlighted Mr.

Adams's testimony that he was able to access the parcel below the mountain from Star Road, and he had walked up the mountain to the top of his property. *Id.* at 596-97. Based on this fact, she distinguished *Sullivan Township* because the board in that case found that alternative access did not permit the landowner to access any portion of the property. *Id.* at 598. Similarly, she found *Union Township* was not applicable because in that case half of the property was truly landlocked, and necessity was not at issue . *Id.*

Instead, Judge Hearthway likened this case to *Mazzante v. McClintock*, 976 A.2d 648 (Pa. Cmwlth. 2009). In *Mazzante*, the Commonwealth Court affirmed the trial court's order denying the appointment of a board of view because the landowner had access to his property and sought only to access a different part of his property to construct a cabin. *Mazzante*, 976 A.2d at 654-55. The court held this did not meet the "strictest necessity" required under the Act. *Id.* at 655. Further, the court distinguished *Union Township* because Mazzante did not show his property was truly landlocked. *Id.* Applying *Mazzante*, the dissent opined:

> While the Adamses may be entitled to access *to* their property, they are not entitled to the access of their choice. The Board overlooked the Adamses' admitted access to their property via Star Road, and instead, focused on the access across their property via the logging trail to the crest of their property. The Board evaluated whether the Adamses have access **over** their property to a **specific portion** of their property, rather than determining whether a private road is necessary for access **to** the Adamses' property. Such misplaced focus constitutes an error of law and an abuse of discretion.

*Adams*, 170 A.3d at 599 (Hearthway, J., dissenting) (emphasis in original).[6]

---

[6] The Commonwealth Court majority found *Mazzante* inapposite because the board in that case did not find any facts, and the trial court decided to dismiss based on the pleadings. *Adams*, 170 A.3d at 593. In this case, the majority noted the pleading was sufficient, and the Board evaluated evidence to conclude the Adamses' parcel was effectively landlocked. *Id.*

On the issue of public purpose, the dissent concluded the record was insufficient to support a finding that opening the Adamses' parcel to hunters was a public purpose because the Board deemed the evidence irrelevant because the Adamses did not enroll their property in the Game Commission's program until 22 months after filing their petition to open. *Id.* at 600. Further, Judge Hearthway opined hunting was a de minimis justification and the Adamses were the primary beneficiaries of opening the Roadway. *Id.* As such, she criticized the majority for giving too broad an interpretation of public purpose, which she viewed as "erod[ing] private property rights for personal convenience and a tenuous public benefit." *Id.* at 601.

We granted allowance of appeal to consider whether the Act authorizes the opening of a private road when the petitioning landowner already has access to his property and whether a public purpose exists to support opening the Roadway. *In re Petition of Adams*, 182 A.3d 1000 (Pa. 2018). "In reviewing a Board of View's decision, '[a]ppellate review is limited to ascertaining the validity of the Board's jurisdiction, the regularity of proceedings, questions of law[,] and whether the Board abused its discretion.'" *In re Private Rd. in Speers Boro, II, Wash. County*, 11 A.3d 902, 905 (Pa. 2011) (quoting *In re Packard*, 926 A.2d 557, 559 n.2 (Pa. Cmwlth. 2007)).

To open a private road, the petitioner must demonstrate both that the road is necessary and that opening it will serve a public purpose. *O'Reilly*, 5 A.3d at 248, 258; *Speers Boro*, 11 A.3d at 906. On the issue of necessity, Corl argues the Adamses' parcel is not landlocked because Mr. Adams acknowledged Star Road provides access to the edge of his parcel, at the foot of the mountain. Corl's Brief at 14. Corl notes that Mr. Adams testified that, by using this access point, he can walk to the top of his property. *Id.* Thus, Corl maintains the Adamses presently have access to the portion of the parcel where they now wish to construct a seasonal-use cabin. *Id.* at 15. Because of this

present access to their parcel, Corl contends it is not necessary to open a private road based on the Adamses' desire to build a cabin and accompanying contention that it is cost prohibitive to improve the logging trail off of Star Road to enable construction vehicles to travel up the mountain. *Id.* at 16. To support his position on necessity, Corl quotes the *Little* Court's reasoning that necessity must be based on the present use of the property and that a future, contemplated use cannot provide the "strict necessity" for a taking under the Act. *Id.* at 13 (quoting *Little*, 119 A.2d at 589).

In response, the Adamses maintain the Board properly exercised its discretion in deciding that a private road was necessary. Adamses' Brief at 16. They note the Board found their parcel was "effectively landlocked" because the only other access to the top of the mountain was the unimproved logging trail with a 1,000-foot elevation change. *Id.* Further, the Board found Star Road, which is the only way to access the logging trail, was "more narrow and inhospitable than the route from Holly Hill Road to the Roadway." *Id.* at 17. Additionally, improving the logging trail to facilitate vehicular traffic was cost prohibitive according to the Board. *Id.*

Based on these facts, the Adamses argue that Pennsylvania law supports the Board's finding of necessity to open the Roadway. *Id.* Applying *Little*, the Adamses maintain necessity exists when a property is not landlocked, but other access is "extremely difficult and burdensome." *Id.* at 18. They analogize this case to *Sullivan Township* because the logging trail is not a feasible access point due to the steep incline, and the alternate access over the Roadway employs an existing roadbed. *Id.* Similarly, the Adamses liken this case to *Union Township* because converting the logging trail to a useable road is cost prohibitive due to geographical features. *Id.* The Adamses contend that they demonstrated opening the Roadway was necessary because the Board found Star Road was "narrow and inhospitable," the logging trail was a steep route that was

cost-prohibitive to improve, and accessing the boundary line is not meaningful access to the "usable portion" of the parcel. *Id.* at 18-19.

This case presents an issue of first impression for this Court, which is whether a landowner who has adequate access to their land for their current use of the property can demonstrate a private road is necessary for a different proposed future use. Our standard of review over such a question of statutory interpretation is de novo, and our scope of review is plenary. *Speers Boro*, 11 A.3d at 905. Under the Act, a court may open a private road if the board of view's report determines that "such road is necessary." 36 P.S. § 2732. While the Act does not define "necessary," Pennsylvania courts have consistently construed it to require the "strictest necessity" because the Act is a form of eminent domain. *See Speers Boro*, 11 A.3d at 906; *see also O'Reilly*, 5 A.3d at 256 (recognizing the Act effects a taking by eminent domain). However, absolute necessity is not required; thus, a property does not have to be completely landlocked. *Little*, 119 A.2d at 589. Nonetheless, mere inconvenience is not sufficient, and an existing road must be "of a limited privilege" or "extremely difficult and burdensome" to use. *Id.*; *see also Speers Boro*, 11 A.3d at 906 (holding a board of view's necessity analysis must "consider other available means of access to the property").

In this case, we conclude that a determination of necessity must be based on the present use of the property, where such a present use exists. In this regard, we agree with the *Little* Court's conclusion that the necessity must be a present one because a contemplated necessity does not meet the strictest necessity requirement of the Act. *See Little*, 119 A.2d at 589. Permitting future contemplated uses to form the basis of the necessity would allow takings based on a proposed use, which would vitiate the Act's strict necessity mandate. *Id.* Further, a future use is little more than a self-created hardship when a landowner can otherwise access the property for its present use. Such

a self-created hardship cannot justify the taking of another landowner's property. Here, even if the Adamses were granted use of the Roadway as a private road, they may ultimately decide not to build a cabin on the property. The Adamses did not present any construction plans or experts indicating that construction would be feasible via the Roadway, despite the fact that the Adamses fully owned the property since 1984 and had access to it from the Roadway for several years. Such a speculative future use does not rise to a legal necessity to take another landowner's property.

Here, the Board, the trial court, and the Commonwealth Court framed their analyses by looking at the necessity of the Adamses' future contemplated use of the property for a seasonal cabin. They concluded that the Adamses demonstrated necessity because the access from Star Road was inadequate to permit construction vehicles to access the mountaintop where the Adamses wanted to build the cabin. This was an error of law because a proposed use cannot form the basis of the necessity. *See Little*, 119 A.2d at 589; *Mazzante*, 976 A.2d at 655.

Instead, the proper framework to evaluate necessity is to consider whether there is a present use for which the landowner cannot access the property. Proceeding from the premise that the current use must form the basis of the necessity shows the Commonwealth Court erred in concluding *Sullivan Township* is dispositive. In *Sullivan Township*, Hilltop could not access the cabin it had already constructed on its property, and alternative access routes were too burdensome. *Sullivan Twp.*, 964 A.2d at 497, 503. Here, Mr. Adams testified that he has used his parcel to hunt for his entire life, he can access his parcel from Star Road, and he can walk up the mountain to hunt. N.T., 7/24/15, at 31-32. While the Adamses want to build a cabin on top of the mountain as a new use of the parcel, they do not want to incur the expense of improving the logging road to facilitate construction. *Id.* at 22, 24, 40. Additionally, there was no evidence that

even if the Adamses were permitted to access their parcel via the Roadway that it would provide access to the top of the mountain where they wished to construct the cabin. Thus, the Adamses did not demonstrate a present necessity to open the Roadway on Corl's property for their current use of the property; instead, they relied on a proposed future use to self-create a necessity.

We find this case is analogous to *Little* in which the Superior Court concluded the landowner did not demonstrate strict necessity because "the present roadway which gives to appellant access to [a public road] is adequate for the present use and enjoyment of her land." *Little*, 119 A.2d at 589. Additionally, in *In re Packard*, 926 A.2d 557 (Pa. Cmwlth. 2007), the Commonwealth Court applied *Little*'s principle that a necessity analysis must be based on existing conditions. *Packard*, 926 A.2d at 560. The landowners in *Packard* were in circumstances similar to the Adamses in this case: the access they had to their property was sufficient for their current outdoor recreational use, but it was inadequate for their future intended use of building a home on the side of a mountain. *Id.* The Commonwealth Court concluded that the landowners did not prove necessity, reasoning "the property at issue is on the side of a mountain and, although [p]etitioners maintain that the present road is impractical for their intended use, i.e., to construct a residence and reside on the mountain, a proposed or future use of the property does not warrant the appropriation of another's land for creation of a road." *Id.* Likewise, in this case, we conclude as a matter of law that the Adamses' proposed new use of the parcel for a seasonal cabin does not meet the requisite strictest necessity to justify taking a portion of Corl's property under the Act when the Adamses have adequate access to the property for their existing use.[7]

---

[7] Due to our conclusion that the Adamses did not demonstrate necessity, we need not reach the issue of whether there was a public purpose to support the taking.

Based on these considerations, we reverse the orders of the Commonwealth Court and the trial court.

Justices Baer, Donohue and Dougherty join the opinion.

Justice Wecht files a concurring opinion in which Chief Justice Saylor and Justice Todd join.