J-S50027-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| ORREN P. WHIDDON AND FOUR QUARTERS INTERFAITH SANCTUARY OF EARTH RELIGION | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : | |
| v. | : : : | No. 356 WDA 2019 |
| EDWARD V. NORTHCRAFT, BEVERLY J. NORTHCRAFT, SHAWN E. NORTHCRAFT, LUTHER C. CONRAD, LEROY A. CONRAD, JOYCE PLAKE, LESTER W. CONRAD | : : : : : : | |

Appeal from the Judgment Entered March 21, 2019
In the Court of Common Pleas of Bedford County Civil Division at No(s):
1084 for 2016

BEFORE:   LAZARUS, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY MURRAY, J.:                    FILED OCTOBER 11, 2019

Orren P. Whiddon (Mr. Whiddon) and Four Quarters Interfaith Sanctuary of Earth Religion (Four Quarters) — (collectively, Appellants) — appeal from the judgment entered in response to Appellants' complaint for judicial recognition of easement. After careful review, we affirm.

It is undisputed that Appellants "enjoy an easement over the private lane through [Appellees'] respective properties." See Memorandum Opinion, 12/18/17, at 2 n.2; see also N.T., 8/21/16, at 11. The trial court summarized:

_____

[*] Retired Senior Judge assigned to the Superior Court.

The parcels of land owned by [the parties] were once a single parcel containing approximately 440 acres. This original parcel was eventually subdivided into several parcels, with Plaintiff Whiddon owning a parcel which is set back approximately ½ mile from the nearest public road and essentially "landlocked" by Defendants' parcels. Both before and after Plaintiff Whiddon acquired his land in 1994, the parcel was accessed by a private lane over Defendants' parcels. The size, location, and character of use of this particular lane are the issues in this matter.

Memorandum Opinion, 12/18/17, at 1 (emphasis added) (footnote omitted).

BACKGROUND

Mr. Whiddon resides on the property and is a founder and member of Four Quarters. N.T., 8/21/17, at 25. Four Quarters is a non-profit organization that operates a licensed winery. Four Quarters holds "gatherings of people for a variety of activities" including religious ceremonies, music festivals, and other festivals at which they "market and sell mead products," which accounts for the majority of their income. Appellants' Brief at 20-21. Appellants state, "like most limited wineries, Four Quarters is 100% dependent upon bringing people on site to market and sell its mead products." Id. at 21. Appellants detailed their enterprise:

Appellant Whiddon founded Four Quarters in 1994 and it was incorporated in 1995 as a 501c3 Nonprofit Organization under Pennsylvania law. The Four Quarters has also established 501d Community of Service that is comprised of its monastic community members that share a common treasury and take the vows of poverty. The Four Quarters monastic community members reside on the property, serve as primary caretakers of the land and handle the day to day operations of the Church as overseen by the corporation's board of directors.

Four Quarters is a religious association of people drawn to the earth and its cycles, the natural world and its polarities and

seeing them in a manifest expression of spirit. Essential mission of the Four Quarters is to "hold, honor and care for the land in a ritually responsible and focused way to provide access to the land for the spiritual needs of anyone and fostering communication and cooperation among the people by organizing open religious gatherings and festivals upon the land." The Four Quarters provides the structure and land resources to those who participate in many forms of earth spirited religion. Earth based religions focus on living sustainably from the land and involves spiritual practices with nature and land as the source of religious experience.

Agricultural production is fundamental in the spiritual practice of the Four Quarters in fostering all earth . . . Four Quarters has engaged in its own agricultural production operation since 1995 and since 2006 Four Quarters has maintained a limited winery license issued by the Pennsylvania Liquor Control Board to produce meade products, which are made using herbs and other ingredients grown from the land.

Appellants' Brief at 12-13.

## CASE HISTORY

Relative to the use of their property, on December 8, 2016, Appellants filed a complaint for judicial recognition of easement. Appellants averred that "the roadway here at issue has severely deteriorated . . . necessitating improvement thereof." Complaint, 12/8/16, at ¶ 8. Appellants further averred that Appellees "verbally harassed and made threats of violence to persons legally using the roadway." Id. at ¶ 9.

Appellees Joyce Plake and Luther C. Conrad separately answered the complaint with each filing a new matter; the other Appellees did not respond. The trial court held a hearing on August 21, 2017, at which Appellants sought to have the road widened and improved. See N.T., 8/21/17, at 6. Counsel for Joyce Plake confirmed, "[w]hat is disputed is the nature of the widening of

it." Id. at 11. Appellants presented testimony from Mr. Whiddon, Four Quarters resident and organizer Pamela Alexander, registered surveyor Rex Clark, and licensed engineer Ryan Clark. Appellees Luther Conrad, Lester Conrad, and Joyce Plake testified in their defense.

On December 18, 2017, the trial court entered a memorandum opinion and interim order, finding that Mr. Whiddon had an implied easement "over the Defendants' respective properties," but "the location and size of the private lane shall be limited to its current state." Interim Order of Court, 12/18/17. The trial court prefaced the order with the following explanation:

> Having found that the easement exists, we turn to the more essential issues of its location, size and character of use. First, [Appellants] argue that the private lane's location, shape, and quality has been altered and that, consequently, [Appellants] should be permitted to restore the private lane to its original state. Inasmuch as [Appellants] have failed to provide any credible evidence in support of this contention, we disagree. [Appellants] offered the testimony of two experts: Rex Clark and Ryan Clark. Rex Clark testified that the private lane's position may have shifted. However, Rex Clark's opinion is substantially based upon old aerial views that he admitted are not to scale. Rex Clark also admitted that he was unable to find any markings along the private lane to reference any prior surveys. Based upon our own observation of the private lane at the property view and our close examination of the exhibits, we do not place any weight on this expert's findings and opinions. We also note that [Appellants] utterly abandoned their other expert, Ryan Clark, before he was able to express his opinions. See Tr., p. 88.

> Conversely, Defendants Luther Conrad and Joyce Plake both testified that they have lived on or near their respective properties for most of their lives and that the private road has not significantly changed at all during his [sic] lifetime. Based upon our observation of these witnesses, we find this testimony as credible. Moreover, this testimony corroborates our assessment of the private road after we had the opportunity to personally view

- 4 -

it. In sum, there is no credible evidence to indicate that the private lane was changed or altered in any significant manner whatsoever. Accordingly, we find that [Mr.] Whiddon's implied easement over the private lane is strictly limited to its location and size as it exists in its current state.

Next, we address the heart of the case: whether [Appellants'] current use of the private lane exceeds any reasonable or normal evolution of the easement. We find that it clearly does so. We first note that the area in which all of the parcels are located is what would be considered by any person to be extremely rural. The parcels are located several miles away from any town. In addition, all of the nearby roads—including the public roads—are small, winding, and have very little traffic. Prior to [] Whiddon purchasing his original parcel, the private lane was used only to access a single home. Subsequent thereto, Whiddon testified that he began having "church" services on the property on a bi-weekly basis. While it is unclear from the testimony how many people actually attended these functions shortly after [] Whiddon's purchase of the property in 1995, [] Whiddon testified that the "church" eventually had 350 members. More critically, within the last few years, [Appellants] have begun to hold functions on their properties in which 3,000 to 3,500 people are in attendance. [] Whiddon testified that he has had approximately 1,200 cars parked at his property at one time, with other smaller events holding 250 cars. [Appellees] Luther Conrad and Joyce Plake testified that they have experienced heavy usage of the private lane by vehicles to [Appellants'] properties, including vehicles being stopped and parked on the private lane.

Memorandum Opinion, 12/18/17, at 4-6 (emphasis added) (footnotes omitted).

From the inception of the case through the filing of the trial court's December 18, 2017 memorandum opinion, Appellants were represented by Robert W. Lape, Esquire. At some point in the proceedings, it became apparent that Attorney Lape suffered from "serious cognitive-related health issues at the time of the original hearings," which "significantly affected

[Appellants'] ability to form a record." Memorandum Opinion, 2/8/19, at 1. Thus, Appellants obtained new counsel, who entered his appearance on January 24, 2018, and requested that the record be opened for additional testimony and evidence. The trial court granted the request and additional hearings were conducted on August 3, 2018 and December 18, 2018. On February 8, 2019, the court entered a second memorandum opinion and order, in which it "declined to substantively modify [the prior] factual findings and legal conclusions." Memorandum Opinion, 2/8/19, at 1. The court also found:

> After re-opening the record, [Appellants] presented additional evidence regarding the corporate functioning of [] Four Quarters Interfaith Sanctuary of Earth Religion (hereinafter "Four Quarters"). Inasmuch as we find said evidence credible and that [] Four Quarters is a corporate entity acting independently from [] Whiddon, we modify our original ruling on the type of [] Whiddon's easement. Inasmuch as we now find [] Whiddon's use of the easement to be necessary to access his land since he has no independent legal authority to traverse over the parcel held by [] Four Quarters, we find that [] Whiddon enjoys an easement by necessity over the lands of [Appellees].

Id. at 2-3 (footnote and citation omitted).

Appellants filed a post-trial motion for relief which the trial court denied "in its entirety." Order, 9/26/18. Appellants then filed a notice of appeal. The trial court ordered Appellants to file a statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) and Appellants timely complied. In response, the trial court filed an opinion stating that "all issues raised on appeal are fully addressed by our

Memorandum Opinions docketed on December 18, 2017 and February 8, 2019." Trial Court Opinion, 4/9/19, at 1.

On March 15, 2019, this Court ordered Appellants to praecipe the trial court to enter judgment.[1] Appellants did so, and judgment was entered on March 21, 2019. On appeal, Appellants assert the following:

1. The trial court erred and/or abused its discretion in finding that [Appellants'] character of use exceeds the easement by necessity found by the [c]ourt.

2. The trial court abused its discretion in finding in its Opinion and Order that [Appellee], Luther Conrad, proved his burden that the use of the easement is unreasonable and substantially interfered with his property.

Appellant's Brief at 3.

### ARGUMENTS

We address Appellants' issues together because they are interrelated. Appellants assert that the trial court "correctly determined Appellants had an easement by necessity but erred as a matter of law/or abused its discretion by ambiguously limiting its use." Id. at 18. Appellants state, "[t]his matter simply boils down to use of the easement that was found by [the trial c]ourt."

_____

[1] "An appeal to this Court can only lie from judgments entered subsequent to the trial court's disposition of post-verdict motions, not from the order denying post-trial motions." Stahl Oil Co. v. Helsel, 860 A.2d 508, 511 (Pa. Super. 2004). Because the judgment was ultimately entered judgment on March 21, 2019, "in the interests of judicial economy, we will consider this appeal as filed after entry of judgment." Tohan v. Owens-Corning Fiberglas Corp., 696 A.2d 1195, 1197 n.1 (Pa. Super. 1997).

Id. at 6. Appellants argue that the court erred in finding that "the scope of Appellants' use of the easement exceeded reasonable use," and "failed to appropriately define what a reasonable use would be." Id. at 21. They contend that "there is simply no testimony to support a finding of unreasonable and substantial interference, especially when [Mr. Conrad] does not even reside on the road." Id. at 23.[2]

Luther C. Conrad (Conrad) is the only Appellee to file a brief and participate in this appeal. In Mr. Conrad's view, "this case involves the requests of [Appellants] for an Order permitting each of them to take some of Appellee Luther C. Conrad's ground and to straighten, widen, and improve a private farm lane that crosses Appellee Conrad's land, and use that lane for commercial purposes as opposed to farming and residential purposes." Conrad's Brief at 1. Mr. Conrad claims that Appellants "are requesting in this case to change the historical residential/farming use of the private lane to a new and substantial commercial use. This would not be considered a 'normal evolution' in light of the rural character of all the properties in question." Id. at 11.

### ANALYSIS

We begin our analysis by noting our standard of review:

> We must determine whether the findings of the trial court are supported by competent evidence and whether the trial judge

_____

[2] Mr. Conrad testified that he does not use the easement to access his residence, but uses the easement because "I have to get in the farm." N.T., 12/18/18, at 146.

committed error in the application of law. Additionally, findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed absent error of law or abuse of discretion.

Cunningham v. Cronin, 206 A.3d 569, 572 (Pa. Super. 2019) (citations omitted).

Pertinently, the trial court determined that Appellants "have unreasonably burdened [Appellees]." Memorandum Opinion, 12/18/17, at 7. The court further opined that its finding "would have been applicable whether [Appellants] acquired their easement by necessity, implication, prescription or otherwise." Id. (citation omitted). We nonetheless recognize that here, where the court found an easement by necessity, the "easement by necessity arises only when there is unity of ownership between the dominant and servient estates and necessity is created when the land is severed." In re Adams, 212 A.3d 1004, 1011 (Pa. 2019) (citation omitted).

> As one distinguished commentator has noted: 'An easement of necessity has been regarded as not limited, as regards its utilization, by the mode in which the dominant tenement was used at the time of the creation of the right, but as available for any use incident to a change in the use of such tenement. It has been said that an easement of necessity 'would seem to be coextensive with the reasonable needs, present and future, of the dominant estate for such a right or easement, and to vary with the necessity, in so far as may be consistent with the full reasonable enjoyment of the servient tenement." Tiffany, Real Property 345 (3d ed. 1939) (footnotes omitted). See also Powell on Real Property 518 (1970).
>
> This is not to say that the owner of the dominant estate can use the rights granted over the servient estate without regard to the rights of the servient owner. See Taylor v. Heffner, 359 Pa. 157, 58 A.2d 450 (1948). Similarly, however, enlarged uses of

> easements resulting from a change in the use of the dominant tenement have been recognized by this Court to be within the scope of the original easement.  See, e.g., Caran v. Bender, 357 Pa. 487, 55 A.2d 353 (1947) (automobiles permitted where only pedestrians had walked); Hammond v. Hammond, 258 Pa. 51, 101 A. 855 (1917) (bridge permitted where formerly only a ford had existed).
>
> Applying these principles to this record, we conclude the chancellor abused his discretion in limiting appellants' right of way of domestic and farm use.  While the husband-appellant testified that in the past he has used the 'back fifty' primarily for agricultural purposes, he also averred at a later point in the litigation that the land might someday be used for its timber or minerals.  It is uncontradicted that the tract in question is unzoned and rural in character.  Courts of equity should refrain from in effect 'zoning' land for a particular use.  Only if appellants embark on a use of the right of way which is unreasonable and substantially interferes with appellees' use and enjoyment of the servient estate should equity intervene if called upon to do so.

Soltis v. Miller, 282 A.2d 369, 371 (Pa. 1971) (emphasis added).

Citing Soltis, the Supreme Court has repeated that "both logic and the policy of maximum land use dictate that the extent of an easement by necessity be defined by the reasonable and lawful uses of the dominant tenement."  Bodman v. Bodman, 321 A.2d 910, 912 (Pa. 1974).  "Where an easement is concerned, therefore, the owners of the dominant and servient estates must not unreasonably interfere with each other's uses."  Kao v. Haldeman, 728 A.2d 345, 349 (Pa. 1999).

The record reveals that Appellants own 9 parcels of property, with one belonging to Mr. Whiddon and the other 8 belonging to Four Quarters.  N.T., 8/21/17, at 23, 42.  Mr. Whiddon, who has lived on the property for more

than 20 years, confirmed that Appellants' land is the "dominate [sic] estate,"
and he accesses the property by easement. Id. at 18, 22. He also testified
that Four Quarters has 350 members and holds bi-weekly services. Id. at 26-
27. Members and their friends and family often "stay overnight" — sometimes
in tents. Id. at 30. There is also vehicle traffic. Mr. Whiddon explained:

> Once a year we have 1,200 cars that is at the big event that
> we have the program for. Right now, we have a gay men's
> spiritual retreat this weekend and I believe they are parking about
> 250 cars, maybe 300.

Id. at 37. He continued, "We provide spiritual content, we provide prayer
circles, Indian Sw[e]at Lodge, Moon Services, Counseling, workshops on Yoga
and Aromatherapy, you name it." Id. at 43-44.

With regard to the easement which allows travel on the dirt road to
access Appellants' property, Mr. Whiddon testified at length about the poor
quality of the road. His testimony included the following account:

> [W]e routinely walk that road and just pick up car parts. It is
> routine, okay. It is a joke amongst our membership about if they
> are going to visit Four Quarters, they are going to come by the
> shop to get their car repaired. At our membership meeting that
> held twice a year, it is always the single thing that is mostly
> complained about. In our on-line questionnaire which we do once
> a year, it is the single most complain[ed about] thing. It is unsafe.
> It is very unsafe for a motorcycle. You must be an expert driver
> to negotiate that gully.

N.T., 8/21/17, at 101-02.

Pamela Alexander is another resident of Appellants' property and
member of Four Quarters who actively participates in events such as Moon
Services. Id. at 48. Ms. Alexander confirmed her use of "the dirt road," which

- 11 -

is the "only access" for her and others attending some of the events. Id. at 49.

Luther Conrad, one of the defendants and the only appellee participating in this appeal, testified that his property lies along the "road in question." N.T., 8/21/17, at 114. He stated that he has lived on his property "all my life, 51 years." Id. at 114-15. Mr. Conrad testified: "The road ha[d] been the way it is right now as long as I can remember." Id. at 115. He also stated that he had "no issues" with Mr. Whiddon "doing repair to road." Id. He specifically said, "he can work the road." Id. Mr. Conrad confirmed his understanding that Appellants have "a right of way" to the road, but added that the road is not as bad as Appellants "make them think it is." Id. at 116, 127. Significantly, Mr. Conrad testified to filing a new matter in which he asked the court to impose "reasonable limitations" on the use of the road, and requested "cutting back on some of the traffic going in and out." Id. at 118. Also of significance, when the trial court re-opened the record for additional testimony in December of 2018, Mr. Luther testified to problems as a result of Appellants' actions — after the August 21, 2017 hearing — of increasing the elevation of the road. Mr. Lester introduced a photograph depicting the change and testified:

> [T]hey pretty much destroyed the field. They filled it in with dirt and stuff below the road. And then they tore my cow fence down. And, ah, they got a big ditch up alongside my driveway [and] you can't even get to our pig pen.

N.T., 12/18/18, at 141; Defendant's Exhibit G. Mr. Lester further testified:

I'm [not] saying [the road] didn't need fixed, but [Mr. Whiddon] didn't need to go as far as he did.

Id. at 148. Mr. Lester clarified that his objection was not to Mr. Whiddon using the road, but to widening it, and to "3,000 people using the road." Id. at 149-50. He said: "Now 3,000 people is a different story." Id. at 150. Mr. Lester expressed his opposition to the increased traffic that began around 2007 or 2008, stating:

Before that it wasn't real bad. But then when it got to that point it was getting real bad he was having traffic jams and everything else down there.

Id. at 150-51.

Another neighbor and defendant, Joyce Plake, testified to being 38 years old and living on her property most of her life. She stated that the road had not changed much during her lifetime; it "hasn't gotten any worse and it really hasn't gotten any better." Id. at 143, 149. She did, however, testify that there are "a lot more cars and trucks going through [the property] than what used to be." Id. Ms. Plake said she had some "issues" with the traffic to Appellants' property, including instances of being blocked in her driveway and being unable to get out to go to work. Id. at 144. Ms. Plake introduced a picture she took on July 28, 2017, which depicted numerous tents and cars of Four Quarters guests who had "driven across a part of my property to get there which is the road." Id. at 149.

As advanced by Appellants, the trial court recognized the "large amount of evidence regarding, inter alia, [Appellants'] wine sales, agricultural efforts,

and 'religious' practices." Memorandum Opinion, 2/8/19, at 3. However, the court noted that such evidence "was never tied into any new credible evidence regarding the use of the easement." Id. at 4. The court ruled that the "location and size of the private lane shall be limited to its current state, excepting necessary repairs and maintenance." Id. at 5. The court incorporated and referenced its conclusion:

> We understand that the character of use of an easement is not static. Indeed, the courts have recognized that the "...normal evolution of the dominant tenement permits reasonable increases in the burden imposed upon the servient tenement." Leistner v. v. Borough of Franklin Park, 771 A.2d 69, 74 (Pa. Cmwlth. 2001). However, changes in use that are unreasonable and undue burdens on the servient tenements are outside the bounds of the easement rights. In Leistner, the Commonwealth Court held that ".... [a] change from a sleepy lane to an access road to a major recreation center is not a reasonable increase in the burden imposed upon Property Owners as servient tenement owners and constitutes an undue burden on the private easement." Id. at 74. We find [Appellants'] use of the private lane to be at least as volatile as in Leistner. What was relatively recently a private lane used sporadically by a few families is now traversed by 3,000 people or more in 1,000 or more vehicles. [Appellants] have not only increased the usage of the easement, they have exponentially exploded the use of the easement far past any normal or reasonable evolution of the road. And, in doing so, we find that [Appellants] have unreasonably burdened the servient landowners.

Memorandum Opinion, 12/18/17, at (emphasis added and footnote omitted).

Upon review, we disagree with Appellants that the trial court "erred by ambiguously limiting" the use of the easement, and agree with Mr. Conrad that the trial court did not err in ruling to "prevent an increase in the burden upon the servient estate" belonging to Appellants' neighbors. Appellants' Brief

at 18; Conrad's Brief at 9. The record provides ample support for the trial court's ruling. Finally, and as noted by Mr. Conrad, "[i]f either party has any questions regarding the scope and intention of the trial court's conclusions, that party may petition the trial court for clarification and/or file an appropriate declaratory judgment action." Conrad's Brief at 13.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/11/2019